Okay, we've consolidated for argument four cases, Riccio v. Sentry Credit, Reisner v. National Recoveries, Magana v. Amcol Systems, and Robinson v. Northam Group. And we appreciate counsel's willingness to have time allocated. We're going to hear first, I believe, from Mr. Blady. Is that correct? I'm sorry, my mistake. We're going to hear from Mr. Jones first. I got so confused because I thought, why are all those people on that side of the table when they're appellants and you're not the appellant? So my mistake. I apologize. Good morning, Your Honor. If it pleases the court, Joseph Jones from Jones, Warford, Kaposta, on behalf of the appellants today, I'd like to reserve seven minutes for rebuttal, if I may. That's fine. Your Honor, it's well established here in the Third Circuit that a dispute to be effective on an FDCPA case, such a dispute must be in writing. It cannot be on telephone. It has to be in writing. And it's undisputed that the debt collectors need to effectively relay this information to the consumer in some type of manner. Could you just stand up on the microphone so we have to make sure the recording works? It's undisputed that the debt collectors have to relay this information to the consumer in some type of format within five days of the initial communication. That's Graziano and Caprio. That's Graziano and Caprio, correct. But the law is the opposite in the other circuits, right? That's correct. How can that be? How can a law passed by Congress have different legal effect in one circuit and a different one in the other circuit? Great question. And, you know, I think part of the issue with that is if the district judges can't agree on it, if the circuits can't agree on it, how in the world is the least sophisticated consumer supposed to understand that? Okay? I mean, simply putting, simply taking. I guess the good news for you, if you're doing consumer side work, is you win everywhere. Because if the courts can't agree on what it means, then surely the least sophisticated consumer will. I think that's a big, I think that's a large part of the argument and a large part with the issues here. And the statute itself is not clear. And then when the debt collectors modify the statute and add certain words to the statute and then put it into the letter, it makes it even more confusing. Except, appellees argue with some force, their letters were almost verbatim. They just, you know, turned it into the second person. You have these rights. And they're getting, in our court, they're getting done with liability for tracking the words of the statute. Your Honor, that's not completely accurate because they're not tracking the words exactly. And merely, even if they did, even if they just cut and paste the words from the statute and stuck it into a letter, that in and of itself isn't enough. The letter has to be read in its totality. Okay. We're going to have some specific arguments about Magana and Robinson's letters. But let's talk first about the broader issue here about, you know, Cresciano. And, you know, you're saying that the letter didn't put an obligation on the debtors to contest this in writing. And you think we can't read it together with the other sentences that follow to kind of collect that. No, I think we have to read the letter in its entirety. The front and back, the sides, and everything to the letter. And it's what would be the least sophisticated. Even if they cut and pasted the statutory language verbatim, you argue you still win because of our writing requirement as articulated in Cresciano. Well, I don't think that in and of itself is just a bright line rule. And we should note that not one of these four cases here today did they cut and paste the statute exactly as it is. Each of them inserted extra words. That's why I said if. Well, not just if either. They inserted another word in that statute. No, I said if. It was hypothetical. Hypothetical. Yeah. I'm trying to get at your argument. I want to understand the implications of your argument. As I understand it, if they cut and paste the statute identically, word for word, they still are in the soup. They're still liable because of the writing requirement that we imposed in Cresciano and Caprio. That's an argument that's being made on a lot of cases down in the district courts right now. But I'm asking for your view on that. Yeah. I don't think it's a clear, bright line rule that just cutting and pasting a statute and stick it in a letter in and of itself is a violation. That's not what Judge Harden is talking about, right? So we all agree that the validation notice, if you will, is a base. Okay. We're talking about what goes on besides the base. And I think what we're all trying to grapple with is, assuming the least sophisticated consumer or debtor, I should say, what is it that is the source of confusion? Right. If the letters, I understand there are differences, but let's talk about the perfect letter. Sure. Right? The perfect letter, right, that's consonant with both the statute and Cresciano and Caprio, assume the validation notice, right, would have a writing. Now, is the confusion anything that is mentioned besides a writing as a way to contest the debt? Where does the confusion step in? Tell us what the perfect letter would be. I would do that, but I think that's a different question than what Judge Harden had asked. Well, that's why I didn't say answer his question. Let me answer his question. I'm as interested in the answer to Judge Greenaway's question as I am in the answer to my question. Okay. We are not necessarily one, but we're really close. I'll try to combine it into one answer then. The confusion isn't just with the word writing. The confusion is whether or not the consumer believes that they have an option, more than one method of disputing the debt. In the Third Circuit, you can only dispute it, obviously, in writing, okay? But when you take this statute and you put it in a letter and then you put a lot of words around the letter and you put boxes and symbols and other language around it, the least sophisticated consumer reads that and they can finish the letter leaving it unsure what they must do to actually dispute the debt. For example, it takes Mrs. Riccio. Mrs. Riccio comes home from work. She opens a letter from a company. She never heard of before. She has no prior relationship with this company. She reads this letter, and it says that she owes a certain amount of money, and it tells them that unless she notifies the debt collector within 30 days, the debt collector is going to assume it's valid. The word notify is a bit of a problem here because that's not in the statute, and yet the debt collector put it in there. They don't qualify how she has to notify. They just say if you notify us, you need to notify us within 30 days, otherwise we're going to assume the debt is valid. She finished reading the letter, and then she thinks to herself, okay, I dispute this debt. I don't want the debt collector to assume it's valid because then they're going to come after me for it. How should I notify them? How should I contact them? This is where the language around the statute means something. You look around the statute, and you know what? They give three options. It says contact us at one of our convenient options, write any given address, call with a toll-free number, or go online. This is Riccio, the least sophisticated consumer. Why in the world would she not use the 800 number and call? There's nothing in this letter that tells her that if she has to notify them in order to stop them from assuming the debt is valid, that it needs to be in writing. And this other language around it kind of confirms that and kind of leads her to believe that, hey, look, they give me different methods. I have to call these people and tell them I dispute the debt so they don't believe that it's valid. How do I do that? I follow their instructions in the letter, and they say contact us, and they give me an option of writing, which means I've got to write a letter, get a stamp, go to the post office, or I can call a toll-free number. Why would we not call the toll-free number? Statute wants clarity, not convenience, right? Right. I mean, that's what a statute calls for. And if she were in the second, fourth, and ninth circuits and she called, everything's fine. In fact, that's a real interesting point, Your Honor, because if we were in those circuits today and Ms. Riccio bought this claim a little bit different. Let's say she bought the claim in those circuits and said, you know what? They violated the GA3 portion of the FDCPA because they're requiring me to put it in writing. I could guarantee you dollars to donuts. Every one of my colleagues here would stand up, wave the letter, and say, no, no, no. It says right here in a big box, call. Well, and it says if you submit a writing. No, no. That's only if you want verification of that. Right, if you want verification. But you don't have to. It doesn't say that with respect to the preventing the debt collective, I'm assuming it's valid. My point is that even if we accept that your critique of this letter renders it problematic in the third circuit, it's not problematic in the second, fourth, and ninth under current law. Correct? That would be correct. Okay. So now you can answer my question. Okay. What's the perfect letter? A letter that says you may contest in writing and says nothing else? A perfect letter in the third circuit. The only one I care about. The second, fourth, and ninth. I don't live there. I don't like it. I like it. I want to qualify my answer by saying, first of all, it's not really plaintiff's responsibility to tell them how to build a better mousetrap. Oh, my heavens. Jeff, answer the question, please. A perfect letter would say, unless you notify us in writing. Why not say it? That's the rule. Why not say it? Why leave it open? Why be ambiguous about it? We see hundreds of letters every month in my office. We do a large volume of plaintiff's work. And you know what? We see a lot of letters that come in that say just that. Unless you dispute the debt in writing within 30 days, receive it in notice, we'll assume the debt is out. You could put that in there. Or you could even make it a better letter, and you could have, as some debt collectors do, send disputes to with an address. Okay? Or all disputes must be in writing, and then you give me an address where to send it to. These debt collectors chose not to do that. In fact, they tell you to call. All right. So if they were up on their Third Circuit law, they might have amended the letter accordingly. But what if a debt collector reached out to somebody in Brooklyn with the same letter, and the person moved to Jersey City? When the letter gets forwarded to Jersey City, they're violating the law, right? But if the letter read like that, correct. Okay. But that doesn't mean that they can't modify the letter to accommodate. Well, you can't modify it. They don't even know it got forwarded from Brooklyn to Jersey City. What are they going to do, chase the mailman down and say, I need to correct that letter? No, but why couldn't you simply have, and I'm telling them how to do their job here. Only if you win. And have a statement here that says, in New Jersey, if you are in New Jersey, your dispute must be in writing. They could write this letter however they want. They chose not to. Let me ask you this question. Braziano as well as Caprio found violations where, quote, both substance and form, close quote, of the debt collector's letter, quote, overshadowed and contradicted the validation notice. I don't care which one you choose, but choose one and tell me how it overshadowed and contradicted the validation notice. Sure. It overshadows it because it leaves. And both of those cases also had a 10 violation in it. It leaves the least sophisticated consumer unsure of what they must do to actually dispute the debt. OK. Caprio was a GA3 violation as well as an E10 violation. When the consumer finishes reading this letter, they finish it and they're confused as to whether they have to call or write. OK. Maybe they're wrong about being confused, but they aren't confused. We can't figure it out. OK. The least sophisticated consumer can't. The language of calling overshadows any words that are in the paragraph that's above that because the one sentence in that paragraph, the very first sentence in the paragraph doesn't say in writing. It just doesn't. So when you look at this, why wouldn't these boxes supersede what's in there? In addition to that form and substance, boxes are quite large in the Recchio case. OK. Why would a consumer look at this and not look at the boxes right below where it says to contact us? And when above that, the debt collector is telling them, you have to notify us. It doesn't say how to notify them, but just notify them. Why wouldn't they call? Why wouldn't they call? I don't know if that answered your question. Well, it is an answer. Yes. Thank you. I'm about out of time. Well, we'll hear you on rebuttal, Mr. Jones. Now we'll hear from Mr. Blady. Good morning, Your Honors. Andrew Blady. May it please the Court. Here on behalf of I'm here on behalf of Northland Group. Your Honor, you hit the nail with the hammer. Under the appellant's theory, debt collectors are in a catch-22. First off, the argument that the validation notice itself is insufficient to convey to consumers their rights was never argued by the appellant at the district court level, so therefore it should be waived. Even if this Court were to consider it, if you look at the precedent set by this Court in Wilson, in Caprio, in Laniato, this Court looked at the entirety of the letter, including the validation notice, which is pretty close to identical to the validation notices that you're reviewing here today, and this Court took no issue with the validation notice itself. That validation notice comes from Congress. Yeah, but then we've got a judicial gloss on it in Graziano and Caprio. I know the word writing is not in A3, and I want to talk to you about that, but I don't know how you could say that this isn't confusing when there's not an explicit statement, you must respond to us in writing. It's if you write to us, we'll give you the following verification, and you're inviting them to call and email, et cetera. So isn't your only shot here really to convince the full Third Circuit to revisit Caprio and Graziano? I don't think it's our only shot. I think, yes, I believe the full Third Circuit should review Graziano. As you stated earlier, Graziano has not been adopted in any other circuit in this country. Every other circuit since Graziano has rejected that issue. It's only three, right? Is it more than three? It's three. Okay. It's three. But if you look at the statute itself, in 1692 G.A. 3, it doesn't have a writing requirement. It doesn't say it. In G.A. 4 and A. 5, it does have a writing requirement. And in Graziano, I guess they came to the conclusion they don't understand why Congress would do that, but there's a very legitimate reason why they would do it. Why? Because under if a consumer disputes in writing, there's a much more substantive impact on the debt collector, meaning the debt collector has to cease calling until they provide validation, and they have to go through the task of providing validation of the debt. Okay. Well, then help us on this very point. You say there's a reason for it. Tell me what is the statutory basis for you making that argument when we compare A. 3 on the one hand and 4 and 5 on the other. I'm not sure I quite understand the question, but – You're saying that you don't have to attack Graziano to get around this. So I'm wondering if you think there's a statutory basis to say that the underpinning of Graziano is wrong. So is there something that Congress was getting at in A. 3, which doesn't have the writing requirement, that it was trying to get at in 4 and 5, creating the difference? Yes. I think what Congress was getting at is if you're going to impose a legal obligation on the debt collector to stop, to stop calling, and if you're going to impose the obligation on the debt collector to validate the debt, Congress decided that the consumer has to go through the extra step of putting that request in writing so there's no mistake about the dispute or putting the dispute in writing to the debt collector. So it has – Right, but what's the – wonderful. Totally with you. What's the reason for A. 3 not having – Yeah, yeah. What good comes from A. 3 not requiring a writing? Or why does it make sense? Why is A. 3 there, then? Is that the question? Yeah, well, not just A. 3, but A. 3 without a writing requirement. Right. I mean, I know you know this, but that's the hub of the issue, right? Because we understand you want to get rid of Graziano, but the point is what is Congress getting at by leaving the writing out of A. 3? How is A. 3 distinct from – Because A. 3 is just simply making a dispute. That's all. And I think Congress's intent was to make it easier for simply the consumer to make a dispute by simply calling – All right, then what happens? Take us through that. They look at the box. They dial the 1-800 number. They say, you got this all wrong. I don't owe you $622.19. Then what happens? Then the debt collector has to mark the account as disputed. It has an effect with regard to credit reporting. The debt collector has to report on the consumer's credit report that the debt is disputed. It also has the effect of the debt collector can assume the debt to be valid at that point, which has a meaningful effect certainly in Pennsylvania when it comes to litigating an account stated, where one of the elements is that there's no dispute on the debt. All right, so as I understand it, A. 3 causes the debt collector, once the phone call is made, to have to do some things that benefit the debtor or the putative debtor, but they don't have to go to the same extent and trouble to do the kinds of things they need to do if it's an A. 4 or A. 5 communication. That's right. Generalize – I don't know if you have an empirical basis for this, but ballpark are the large majority of debtors disputing by phone or fax or e-mail or are most of these coming in in writing? I mean, I would think the majority of the disputes come in orally, and debt collectors are happy to take them orally. I think the debt collectors are on the same side as the consumers here. I never thought I'd see the CFPB and you guys on the same side, but it happens. Yeah, but the CFPB, who's about to come out with notice of proposed rulemaking – excuse me, about to finalize their rules, they came out with a notice of proposed rulemaking, has taken the position that the congressional intent is held, the session, the Fourth and the Ninth Circuit say it, that a consumer shouldn't have to go through submitting a writing to dispute the debt. All they should have to do is call the debt collector and say, here's what's wrong with it. I do have two more questions I want to make sure to get to. One of them is let's talk some about the point you made earlier where you said this issue wasn't – this wasn't argued in this court, you said it was waived. I think maybe you mean forfeited. But isn't this just an argument in support of the claim that the notice was – violated the least sophisticated debtor standard? It's not a distinct claim here. So I'm not sure that it's forfeited or what weight we should give that. Yeah, I mean, I think there is a difference. I don't think the appellant below, and if you look at Judge Hillman's decision, she specifically called out that they didn't dispute the validation notice itself. So if there is no issue in isolation putting what Congress's language in your debt collection letter, then the only issue that was raised was whether other language, which is what the Wilson case discusses, whether there's other language in the letter that overshadows or contradicts the G notice which wasn't contested to have anything wrong with it. We'll ask your friend on the other side about that in rebuttal. But the other thing I want to know is just briefly about the Robbins letter in particular, which is your client's letter, where we have this prefatory first paragraph, multi-payment options before we get to the writing. I mean, some of the other letters here had the statutory notice up front and boldface and other stuff. Your letter doesn't have any of that. And so even if the others might be read as holistically requiring writing, it's kind of hard to read this one as doing it. If we adhere to our precedents in Graziano and Caprio, do you have any argument that your letter is not, in fact, going to mislead the least sophisticated debtor? Absolutely, Your Honor. Well, there was no issue, I don't think, taken by anyone on the first paragraph of the letter. You're saying he took no issue with the second paragraph. He took no issue with the first paragraph. But he took issue with something here. He took issue with the third paragraph. With the third paragraph, which is should you have any questions, please feel free to call. That's the only thing you think is at issue here. That's the only thing. Your friend may disagree, but we'll hear from him later. We can affirm for any reason. I feel like I'm saying that every argument. He won. We can affirm by any reason supported by the record, right? And this is not a factual question. We can read the letter. It's the legal import of whether the least he lost. Right. Oh, I'm sorry. Yeah. All right. That's right. I'm sorry. I'm mistaken. The forfeiture argument stands. You're right. There's only three paragraphs here. The first paragraph, there's not a demand to pay before the end of the validation period. If you look at this course precedent, I don't think there's going to be an issue with that first paragraph. The second paragraph is the validation notice, which we went through the argument on that. The third paragraph is simply asking the consumer, inviting the consumer to call if they have any questions. And if you look at the reasoning in Caprio and Laniato, they refer to the Teran Ninth Circuit case, which in that case, they distinguish from that case, saying that here in Caprio and here in Laniato, this is more than asking the consumer to call with questions. You're asking them to call to basically to dispute the debt. The language in Caprio and Laniato is far from merely asking the consumer to call with any questions. So when we look at the letter, Northland Group. Yes. That's right, the correct letter. That's right. I'm trying to label everything with all of you fellows. But when we look at that letter, there's the only way for it to be a consonant with Graziano is if you took the phone number off in paragraph three. I think you said. Right. Because that's the only clear way in which. It's stated how to contact your client. Yes. Well, it had the address on it. The address is on the letter. Is it the Minneapolis letter in the upper right? You're saying is the address. Yes. The upper right hand corner has the address. As the Web site address. OK. It doesn't have a dress and an address. It has a P.O. box. Am I reading that right? There's a P.O. box in the upper right. Yeah. Yeah. There's a P.O. box. That's correct. OK. Let's go. All right. Mr. Blaine, thank you. Let's hear from Mr. Cone on behalf of Century. Good morning. May it please the court. Jacob Cone from Gordon and Reese on behalf of Century Credit. If I may, I have seven minutes. I'd like to give you a minute of this letter and six minutes of a bit of a sales pitch for Graziano being reconsidered on bonk and a court initiated on bonk review. Here's the letter. They did not dispute the validation notice front and center. They did not dispute a little bit of letterhead contact information. They only said that these three boxes overshadow. I think that that position is foreclosed by Wilson. It's foreclosed by Caprio. Wilson and Caprio are both post Graziano. I will rest on my brief for that. Now, with respect to Graziano, forgive me. I realize it's only been rejected by three courts. So let me ask you this question. How does, quote, contact us with one of our convenient options? Close quote. Rise to the level of Caprio. Well, it doesn't. I'm saying Caprio distinguished Terran. And Caprio said the collection letter did more than merely ask Caprio to call to see if we can answer any questions. It says, please, if you do feel you do not owe this amount, call. Okay. And that put it squarely at odds with the Graziano holding. That was the problem that this court had with that letter. Not that it included with no further comment the telephone number. Now, my colleague has explained it. These three boxes are consonant with Caprio. I do. Well, more importantly, with Wilson. Wilson actually went further. I didn't have the boxes, but the language went further and was found to pass muster. So unless there are any more questions on the letter. So Graziano, as I said, only been rejected by three sister circuits and the CFPB. But I would suggest to you it's more along the lines of a Friendville. Now, Friendville was a wonderful case. The Third Circuit went first. Judge Greenaway, Judge Hardiman, you were on the en banc panel that reviewed that. It had a wonderful provenance. It was written by Judge Adams. Justice Potter Stewart was on the panel, having retired. And every other circuit disagreed. This case, written by Judge Pollack, a wonderful jurist. Third Circuit went first. It is a counter-textual interpretation of the statute. It imports but words that simply are not there. It is an important issue in a federal scheme that is constantly litigated. And there is a need for uniformity. Because, as Judge Hardiman, you pointed out, you end up with absurd results with the person that lives in Brooklyn who has his mail forwarded to New Jersey. The Eighth Circuit came out with a case tomorrow. Would you make the same argument? I would argue that it's wrong. And I would argue that you have an even deeper circuit split that if somebody is not going to eliminate the circuit split, it calls for Supreme Court review. Maybe that would be better, to get the high court to take it, right? If we reverse ourselves, then you don't have a circuit split. And they don't take it, and then you're wondering what's happening in the other seven circuits. I think that with the guidance of four circuits and pretty much all the district courts elsewhere that unanimously reject this view, that I think that the problem will have taken care of itself, especially with the executive guidance of the CFPB. A couple of questions about that. One of them, are there any reliance interests on the other side, reasons why people might have built business models around our holding in Graziano? I mean, we don't have the authority as a panel, but if our court gets to that stage, we've got to consider taking the significant step of overturning one of our precedents. Obviously, we might want some briefing before that, but wouldn't your friend on the other side say there are lawyers such as he who are filing suits and there's some kind of reliance on Graziano? Well, I mean, yes, these lawsuits are springing up like dandelions across the district courts of the Third Circuit. And yes, there is a business model on that side of whatever is written is not good enough, of course, in the other circuits. But frankly, one important legislative goal of the FDCPA is to reward good debt collectors and not punish them. It's to punish the bad debt collectors, even the field, not to inhibit fair debt collection activity. And I submit that our letter is a pretty milquetoast letter that really goes to great lengths to attempt to comply with the statute. And with respect to that, I would direct you to Judge Wolfson's recent opinion that just came out August 9th, so we haven't sent you a little 28-J letter yet. But it's Gotsman v. Virtuoso's Souring Group, and it's 2019 U.S. District Lexus 134358. And she wrote, debt collectors likely relied upon the plain language of the statute and mirrored such language in its debt collection letters. As a matter of fairness, defendants should not be subjected to statutory liability in this context when it reasonably relied on the very statute to craft the notice it issued. Thus, I do not deem the language of the letter to be an abusive debt collection practice because it closely tracks the statutory language provided in 1692 G.A. So I've got a broader question that maybe piggybacks on what Judge Hardiman asked. How often do these cases go to trial and make it up on appeal versus settling? As we think about whether our court ought to address this or leave it to the Supreme Court, is this the kind of thing that's going to keep bubbling up, or do these cases ultimately go away pretty quickly? Well, there are a tremendous number of them. If you're talking about these letter cases, these letter cases tend to be fought out. The plaintiffs' counsel tend to appeal every one that they're not happy with because all they need to do is prevail on one, and it feeds their business model substantially. So you have these four. You have more behind. You have the first case that I'm aware of, which is Cadillo, which my partner is here. It represents the debt collector in that case that hasn't been briefed yet, but that's one of the ones that directly attacks the 1692 validation notice language that everybody uses. So those are coming up next. And those are the ones, as I said, that issue was not preserved and litigated below, and I think we win on that, but it is squarely presented by the ones that are coming up next. And, you know, if Graziano is fixed, it fixes the problem globally across this circuit. And you have a problem. You have problems in your former district, Judge Greenaway. And now if you look at the Rule 28J letters that were submitted in my case, there are now a couple of cases, including Cadillo, where they have found that the validation notice itself, which has frankly always been considered a gold standard, it's just referred to among all the circuits as the validation notice. Can I ask you about the record in your case? So your co-counsel asserted that the challenge to the validation notice in general was not argued in his case. Your position is, was it argued in your case? It was not argued below. They sought to inject it by virtue of a Rule 28J letter that they submitted January 24th when they submitted the Dernal and Henry EDPA decisions. And we responded on the 29th with a letter saying it's been waived, and in any event, those decisions are wrong. And look at all the other decisions that hold that the validation notice passes buster. Okay. Thank you, Mr. Cohen. Thank you, Your Honor. Mr. Williamson. May it please the Court, Mitchell Williamson with Varon and Neuberger on behalf of National Recoveries. In answer to your last question in terms of litigation, I'd like to point out that there is currently 23 decisions within the last three years regarding overshadowing this issue. And in all of those cases, the g-notice was accepted as the gold standard, and the issue was whether subsequent language overshadowed that, as is this case. In terms of the g-notice, there's also a considerable amount of cases which have been litigated, and there's quite a few more in the pipeline waiting for decisions. So the quantity of litigation currently, they're not, very few are being settled. They are being litigated, and the determining factor is the resources of the defendant. So what you have is smaller agencies are settling these cases because it's economically feasible. It makes more sense for them to settle. They don't have the money to continue and litigate and reach this level, and only the bigger players can afford to go this far. We've heard arguments that the validation notice, that's what you call the g-notice, right? Yes. That that was forfeited in the other cases. Is it a live issue in your case, or do you argue it was forfeited as well? I argue that it wasn't litigated and it wasn't addressed in the opinion. It really wasn't. It was kind of a throwaway. Well, it didn't need to be addressed in the opinion to be preserved. Was it argued in your case? I don't think so. I don't believe it was. You mean that's your argument, or you don't remember? I don't believe it was. I don't believe it was argued when I reviewed their brief. I don't believe they truly argued it. I think they tossed in the comment. There were some comments, but it wasn't focused on. But they didn't mention it. I think that, to be fair, they mentioned it. Okay. All right. Specifically as to the letter in my case, to get to the specifics, as the Court is all aware, in the first paragraph, it introduces who the players are. The second paragraph is the g-notice. And the use of the word, counsel raised the point that they didn't have to use the word notify. I'm not quite sure what other word would fit. I do know that there's a case, unless we hear from you, which is a case in Pennsylvania, the Homer case, which the Court found a problem with that colloquialism. So notify seems to be the word, seems to be the only accurate word. Below the line, it gives a phone number where the company can be reached. It also points out in the fourth paragraph here, it gives the safe harbor language in terms of interest and other charges accruing, and advises the debtor that if they want a per diem amount, because since interest is continuing to accrue, the amount will change from day to day, that they can call to get that information. And lastly, there's the consumer feedback, where it says specifically to submit complaints, questions, or other concerns. And it gives an email address of the compliance at National Recovery, gives a toll-free number, and it gives also a fax number. There's no invitation to call regarding the validity of the debt, whether they owe the money, whether they're the right individual. And to step back a second, I believe that is the point of that first sentence, three, is to ask the question, I don't think I owe this amount, or I don't think I'm the right person, and to put the debt collector on notice. The writing requirement requires the debt collector to take certain action. They have to cease until they respond, which is not a requirement under three, and I think that's why there's not a writing requirement in three. Thank you, Mr. Williamson. We'll hear last from Mr. Shapiro. Thank you. Good morning, Your Honors. I'm Peter Shapiro, Counsel for AMCAL. I wanted to make one preliminary point about Graziano. I appreciate why the Court would be interested in exploring the reasons why writing would be referenced in one subsection and not in others, or vice versa, referenced in two subsections, but not in the one that's critical here. My point would be that it really doesn't matter what Congress was thinking because the Court should be guided by what it said, and clearly it said nothing about a writing requirement in this regard, and that's why Graziano should be revisited by the Court en banc. I know, Judge Hardiman, you had mentioned early on in this process that we would get to the Magana letter language specifically. I think our brief articulates why we believe there's no certainly the word call is not in there. Could you tell me? No, it's actually Judge Bevis. He's going to ask you a question. Oh, I'm flattered to be confused with Judge Hardiman. Which parts of this letter are at issue here? Which parts were challenged? Which parts weren't in your case? The issue below was solely not the G notice issue at all and not the issue now being raised that in the first sentence unless you notify, currently they're arguing unless you notify in writing, should be said, and that was never presented to the Court below. So we don't think that exceptional circumstances are presented here that would justify revisiting that and allowing the appellant to prevail on that basis. So what did they argue below? What they argued below is that the letter was overshadowing because it provided in the full content of the letter that you can contact our office. So it's not, was it the third paragraph, this please call customer service, or what parts were at issue in the district court? I think it's that please contact our office, which follows the words if you need help. Oh, at the first paragraph, please contact our office where a representative is on hand to assist you. Right, if you need help with this bill or have questions. So I think it's very stark, and I think Judge Kupler got it right. If you need help, contact the office. If you have questions, contact the office. If you need to dispute, you have to notify the office, and the notification is provided for in writing. But it never says directly if you dispute this debt, you must write to us. It does not say that, but I believe that this court should be guided by the many courts that have held similar language to this, which track the statute. But those are outside our, that gets the Graziano issue, right? If you really want to be careful to comply in the Third Circuit, based upon what Graziano and Caprio says, there should be a sentence in there that says, if you contest this debt, you must do so in writing. Yes, but I think in the other prior decisions cited by counsel, this court has upheld similar letters with language akin to this, and I think it should do the same here. All right. So was there mention of the Graziano or G notice issue in the district court? Was there, was it discussed at all by appellate? I don't believe it was. Okay. That's our argument in that regard. All right. Thank you, Mr. Shapiro. At long last, we'll get Mr. Jones back up on rebuttal, and can we start where Judge Bevis just finished? Sure. As counsel is probably aware, we do have a vigorous forfeiture doctrine in this circuit. You're not allowed to raise issues for the first time on appeal. We review decisions made by district courts after the issues are presented, joined, argued, discussed, and decided by the district court. So with that, it's incumbent upon you to show us where you raise, joined, and presented to the district court the legality of the validation notice. Every single complaint, all four of them, all allege a violation of the validation notice. Each complaint alleges a 1692 GA3 violation. That's the substance of the whole complaint. It's the substance of the whole argument. You can't have overshadowing without challenging the g-notice itself. Each and every one of these complaints challenges the g-notice. Well, but wait a minute. Hold on. Let me just slow down a little bit, because I think you can have an overshadowing argument with a valid g-notice, can't you? You could. Right. So as I understand the line up against you here, what they're arguing, all four of them, perhaps not so much Mr. Williamson, is that you never told the district court in these cases that the g-notice itself, the validation notice itself, was illegal. What I hear them saying is you argued that there is a validation notice in these letters, but it's overshadowed by the please call and the other trappings. Well, each complaint says a little bit more than just that, Your Honor. Each complaint says that the G3 notice does not provide or leaves the upon that each letter says that upon the debt collector finishing, the consumer rather, finishing reading the letter, including g-notice, that the letter overall leaves the consumer confused or unsure of exactly what they must do to dispute the debt. They leave the letter with the impression, maybe incorrectly, but they leave the letter with an impression that they could call. And in order for it to overshadow, in order for that argument to hold that they think that they could possibly call it, that calling is an option, the g-notice has to come into play. Each and every complaint talks about the g-notice. Each and every complaint talks about the E10 violation, which deals with a statement having two or more meanings, one of which those meanings are misleading. Well, if you take any of the letters, you take Riccio, for example, you could read that letter to mean more than one thing. You could read this letter to mean that I could call Century Credit at that toll-free telephone number, or I could write to them, or I could call them. Well, not all three are correct. Only one is correct. They have to write. So if they choose to use these words and put these options for payment, options for contacting, rather, in the letter, the burden is on them, on the debt collector, to qualify it to the consumer so the consumer knows what they can do or what they can't do. I find it hard to believe that a consumer would read this letter and dispute the debt and not call. I mean, particularly when they give me a toll-free number to call. Why would the debt collector not call? The debtor. Why would the debtor not call? They would certainly call because it gives them a toll-free number to call, and it tells them to contact us, and it gives them a place to contact that. And when we look at the Reisner letter, the Reisner letter is even a little more interesting because when you read the letter as a whole, which is what the least sophisticated consumer is assumed to do, they read it, and even the first paragraph is a little bit confusing. They're saying we're writing you about either your defaulted student loan or we're writing you about a grant overpayment. So they're not even sure what they're trying to collect. So it creates a little confusion. What you're arguing is confusing in each of these is collectively that the issue, that the letters did not make clear that the dispute had to be in writing. That the letters in the totality do not make clear that the dispute needs to be in writing if they want to stop the debt collective from assuming the debt is valid. Okay, right. So we had this question. We could conceptualize this all as a single claim about the writing requirement. One of the arguments is confusing or not. We also have the ability to affirm on any grounds in the record. So what would you say about the representations? Three of your colleagues on the other side said this just was never – the G notice was never raised at all. And Mr. Williamson said it was tossed in, but it wasn't really argued. I don't expect you to have the answer offhand, but what do you recall to the best of recollection about what was mentioned, discussed, adverted to somewhere in the district court briefing or argument? Each and every case has played, and in the pleadings down below, talk about the G notice. Okay, that's the essence of it. We argue that the G notice, G3 notice, that sentence is confusing because of the other language that's in that letter. You keep referring to the pleadings, though. In response to my question, Judge Bevis is referring to the pleadings, but that seems to imply that you didn't really argue it. No, it's – Did it not – did it sort of fall by the wayside in the course of arguments? No, no, I didn't go back. Maybe we shouldn't be focusing just on the G notice. Was the argument in the district court about confusing the debtor about what he or she had to do as to disputing in writing versus other means? I think that's along the lines. I think the argument in – But all four of these cases concerned whether the debtor would be confused into thinking he or she didn't have to write where, in fact, he had to write. Whether or not the debtor believed that they had more than one method to dispute the debt, either by calling, by writing, by sending an email, that when the least sophisticated consumer finished reading that letter, they believed that they could possibly call or they had the option of writing. It's the whole option thing that is really the most confusing part because there is no option in this circuit. I mean, defense counsel can argue all they like about Graziano and Caprio. It should be changed, okay? That's a different story. That's not what we – those are not the rules that we're playing under today, okay? In the Third Circuit, it has to be in writing. There's no reason why they didn't put in writing in the letter. What's the – give me the best letter for you and the best argument that is confusing if there is a writing requirement in place. I think I put them all together. I think if we look at – Walk me through your favorite one. Sure. My favorite one, and it's a toss-up between Recchio and Reisner, okay? I can discuss either one. I think they're both equally as bad. What's the best – what specific words in the letter make this confusing? We look at Reisner. Mr. Reisner comes home. He opens up this letter from a company he never heard of before. This is the first communication with it. It tells him right off the bat that they're writing to him about one or two things. They're not quite sure, either a defaulted student loan or a grant overpayment. And then he reads the statutory language that's been modified to say that unless you notify us within 30 days, we're going to assume that debt is valid. And then he continues to read the rest of the letter. When he finishes reading this letter, if he wants to stop the debt collector from assuming the debt is valid and get all the protections that go along with that, he's got to contact them somehow. Well, you look at the paragraph that says, right below the line where it gives national recovery, it gives its office hours, it gives the days of the week it's open. It tells him that they're in the central time zone. Then it says, you may write us at the address listed below or telephone us at the telephone number below. Do not send payments to this address. So the question becomes, why is this information provided? It's not for payment. It's to contact them. There's nothing here that says that they can't contact them to dispute the debt. You told me early in the letter that unless I notify you, you're going to assume this debt is valid. Well, I'm going to call. I'm going to go to the nonpayment section of the letter that says, don't send payments here, so it's got to relate to other items, and I'm going to look to my options. My options are what? I can write to National Recoveries at the P.O. Box. I can call the Toe Free telephone number, or I can send it back similarly. There's three options, and only one option is valid. When you read through the rest of the letter, and you get down to the very bottom, where it talks about to submit complaints, questions, or other concerns, you may do so via fax, e-mail, or call in a Toe Free number. Again, it's encouraging the debtor to call. Why would Mr. Reisner read this letter, dispute the debt, and not call? All right. Thank you very much, Mr. Jones. With the able assistance of counsel, I think the court understands what's going on in this case, despite my initial confusion as to who was on what side. We got it right, and we appreciate everyone's hard work on all the cases we heard, and we'll take this one as well under advisement.